IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES PINKNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-00380-NJR-DGW |
| | ) |
| FRANK EOVALDI, JERRY TANNER, | ) |
| and STEVEN CONRAD, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Frank Eovaldi, Jerry Tanner, and Steven Conrad on September 16, 2016 (Doc. 87) and the Motion for Summary Judgment filed by Plaintiff James Pinkney on September 30, 2016 (Doc. 90).

### INTRODUCTION

Plaintiff James Pinkney was an inmate incarcerated at the Lawrence Correctional Center in July 2014.[1] He alleges that on July 9, 2014, after a strip search, he was compelled to sit at a steel table in handcuffs for three hours by Defendants Jerry Tanner and Steven Conrad. Defendants Tanner and Conrad are correctional officers at Lawrence. Pinkney claims that Defendants Tanner and Conrad, along with Defendant

---

[1] Pinkney was released from prison but has since been re-incarcerated at the Sheridan Correctional Center in Sheridan, Illinois.

Frank Eovaldi, a correctional sergeant, slammed his head into the table and refused medical attention for the resulting headache. Pinkney filed a 42 U.S.C. § 1983 complaint on April 6, 2015, and he has been permitted to proceed on one count of excessive force against Defendants Eovaldi, Tanner, and Conrad (Doc. 9).

Defendants filed a motion for summary judgment on this claim (Doc. 87) and notified Pinkney of the consequences of failing to respond (Doc. 89). Instead of filing a response, Pinkney filed his own motion for summary judgment (Doc. 90) to which Defendants have not responded. Pinkney's motion can be best characterized as a response to Defendants' motion, a conclusion that is supported by Defendants' lack of response. As such, all facts are viewed "in the light most favorable to the nonmoving party"–here, Pinkney. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007).

## BACKGROUND

On July 9, 2014, Pinkney's cell was subjected to a search, during which he, along with other inmates, were placed in the dining hall. He was seated at a four-person table, while handcuffed, and was instructed by correctional officers to keep his head down on the table (Doc. 88-1, p. 5). Pinkney kept his forehead about six or seven inches off the table (*Id.*, pp. 5-6). At some point during the three hours that Pinkney was in that position, his head began to hurt, and he raised it up to stretch his neck (*Id.*, p. 6). There is no evidence that Pinkney was causing a disturbance. Defendants Conrad[2] and Tanner,

---

[2] There is evidence that Defendant Conrad had the day off on the day of the incident. In an undated statement, Conrad indicated that he had a scheduled day off on July 9, 2014 (Doc. 88-2). This information is corroborated by an Illinois Department of Corrections "roll call or sign in sheet" from that day (Doc. 88-3).

who were five or ten steps away, ran over and pushed his head onto the table, hard, causing a severe headache, a "little bruise," and redness (*Id.*, pp. 6, 7, 10). When Pinkney lined back up again to return to his cell, he told Defendant Eovaldi that his head hurt and that he needed to see a doctor (*Id.*, p. 7). Eovaldi told Pinkney that "[t]his is how we treat inmates," and Pinkney walked back to his cell (*Id.*). It is undisputed that Eovaldi did not touch Pinkney on July 9, 2014.

Within a day or two, Pinkney saw a nurse who gave him Tylenol for his headaches (*Id.*, p. 9). Pinkney still suffers from headaches, although they are not as severe (*Id.*, pp. 9-10). He has never seen a doctor for these headaches nor received any diagnostic treatment, and he stopped seeing a nurse because he had to pay a co-pay (*Id.*, p. 10).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in

---

Defendants also point out that Pinkney, who normally wears glasses, was not wearing corrective lenses and that his vision was impaired (Doc. 88, p. 3). For his part, Pinkney appeared to become unsure during his deposition as to whether Conrad was involved when confronted with this evidence (Doc. 88-1, pp. 12, 14). And, he seems to vacillate in his brief as to Conrad's involvement (Doc. 90). Nevertheless, Pinkney maintained in his deposition that he was 100 percent sure Defendant Conrad put his hands on Pinkney and testified that the person involved looked like Conrad (Doc. 88-1, p. 14). Whether Conrad was present and acted as Pinkney describes is a material fact that is in dispute.

genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

"The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). But "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw*, 259 F.3d at 838 (quoting *Hudson*, 503 U.S. at 9). "The use of *de minimis* force, so long as it 'is not of a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). If the force was more than *de minimis,* the core judicial inquiry is whether it "was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Whether the use of force is excessive depends on the circumstances. *Richman v. Sheahan*, 512 F.3d 876, 883 (7th Cir. 2008). Several factors are relevant to this determination: the extent of the injury, the need for force, the amount of force used, the nature of the threat being addressed by the force, and efforts made to minimize the severity of the force used, among others. *Hudson*, 503 U.S. at 7.

In this case, Defendants characterize the incident as a single push to the head, after Pinkney had been instructed to keep his head down, that resulted only in a little bruise and red mark. Defendants note that "not every push or shove by a prison guard violates a prisoner's constitutional rights." *Id.* at 620. Thus, for example, the Seventh Circuit has held that a "simple act of shoving" an inmate into a door frame once and causing some non-serious bruising does not offend the Constitution. *Id.*

Defendants over-simplify the facts in this case. There is no evidence that Pinkney was causing a disturbance or behaving in a threatening or obdurate manner. There is also no evidence that the officers first used other, tamer, responses to Pinkney's actions. *See Guitron v. Paul*, 675 F.3d 1044, 1045-1046 (7th Cir. 2012) (use of force not excessive when an inmate failed to heed a command and remained "defiant" after modest force was used). Thus, two officers "slamming," as Pinkney puts it, his head onto a metal table while handcuffed, seated, and posing no threat appears excessive. This, coupled with Pinkney's injuries, which include persistent headaches, cannot render Defendants' actions *de minimis* as a matter of law. *See Mitchell v Krueger*, 594 F. App'x 874, 876-877 (7th Cir. 2014) (continued use of force on a handcuffed inmate could be deemed excessive). A

jury could find that such conduct, done without provocation or a significant need to restore order, exhibits the unnecessary and wanton infliction of pain. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986) (finding that "[f]rom such considerations as" the application of force, the need of that force in the circumstances, and the extent of injury, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur"). As such, Defendants Conrad and Tanner are not entitled to judgment as a matter of law.

As to Defendant Eovaldi, however, there is no evidence that he used any physical force on Pinkney on July 9, 2014. At most, he said a few words to Pinkney after the incident in question. Simple harassment, if that is what Eovaldi's words can be categorized as exhibiting, does not constitute cruel and unusual punishment. *DeWalt*, 224 F.3d at 612. Accordingly, Defendant Eovaldi is entitled judgment as a matter of law.

Defendants also assert that they are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted). "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In determining whether a defendant is entitled to qualified immunity, the Court

must consider whether the officer's conduct violated a constitutional right and whether the right in question was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier*, 533 U.S. at 201; *See also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). With respect to whether the right was clearly established, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The plaintiff has the burden of establishing that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). While a plaintiff need not present a "case directly on point," he must show that "existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 335, 341 (1986); *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012).

As noted above, a jury could find that Defendants Tanner and Conrad violated Pinkney's Eighth Amendment rights. Thus, the only remaining question is whether that right, within the specific circumstances of this case, was clearly established. *Saucier*, 533 U.S. at 201. It is undisputed that "[t]he notion that unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment is not a new or unusual constitutional principle." *Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993).

Defendants argue that if they are held accountable under the facts of this case, it would represent a change in the law—that one strike would be considered excessive force. Again, Defendants over-simplify the matter. Pinkney alleges that while he was

handcuffed, seated, and posing no apparent threat during a three-hour period, his head was slammed onto a steel table because he raised his head, contrary to verbal instructions, in order to relieve some discomfort. If a jury were to believe that the application of force was wholly disproportionate to the perceived threat and that Defendants maliciously intended to cause harm, then no reasonable officer would believe that his actions were lawful. *See Hudson*, 503 U.S. 10 (finding that the "blows directed at" the inmate, who was shackled and handcuffed after arguing with a prison guard, were not *de minimis*); *Hendrickson v. Cooper*, 589 F.3d 887 (7th Cir. 2009) (upholding a jury verdict for an inmate where a guard threw the inmate against a wall, slammed him onto a concrete floor, and kneed him in response to a single verbal insult made after the guard repeatedly used profanity towards the inmate); *but see Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (finding that being hit in the head with a bucket, which caused daily headaches, during a "disturbance" at a prison is *de minimis*).[3]

The subjective standard inherent in an excessive force case makes a finding of qualified immunity premature without there first being a determination of the facts and Defendants' intent. Accordingly, Defendants are not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Frank Eovaldi, Jerry Tanner, and Steven Conrad on September 16, 2016 (Doc. 87) is **GRANTED in part and DENIED in part**, and the Motion for Summary

---

[3] It should be reiterated that there is no evidence of any heightened security threat or other disturbance during the events in question.

Judgment filed by Plaintiff James Pinkney on September 30, 3016 (Doc. 90) is **DENIED**. Judgment is granted only in favor of Defendant Eovaldi and against Pinkney. The Clerk of Court shall enter judgment accordingly at the conclusion of this matter.

In light of the foregoing, the only claim that remains in this case is Count 1 alleging an excessive force claim against Defendants Conrad and Tanner as to the events on July 9, 2014.

Magistrate Judge Donald G. Wilkerson is **DIRECTED** to recruit counsel for Plaintiff for the purposes of trial and for any other purpose that may be deemed appropriate.

**IT IS SO ORDERED.**

**DATED:   January 6, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**